

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-6-2004

# Allauddin v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1443

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Allauddin v. Atty Gen USA" (2004). *2004 Decisions.* Paper 103.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/103

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-1443

_____

SAVAR ALLAUDDIN;
GULAM SERVER RAHMATH;
HARONE JAAVED,

Petitioners

v.

JOHN ASHCROFT, ATTORNEY
GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Board No. A72-020-034)

_____

Submitted Under Third Circuit LAR 34.1(a)
on May 24, 2004

BEFORE:  ROTH and STAPLETON, Circuit Judges, and
SCHWARZER,* Senior District Judge

(Opinion filed: December 6, 2004)

_____

*The Honorable William W Schwarzer, Senior United States District Judge for the
Northern District of California, sitting by designation.

OPINION

**ROTH**, Circuit Judge:

Petitioners seek review of a final order of deportation. For the reasons that follow, we will deny the petition.

On December 20, 1998, the Immigration and Naturalization Service (INS)[**] charged Sarvar Allauddin, Gulam Sarvar Ramath, and Harone Jaaved with removal under section 237(a)(1)(B) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(1)(B) (2004), for overstaying their visas. Sarvar and Gulam are husband and wife, and Haron is their son. They are all natives and citizens of India and entered the United States on August 21, 1988, as non-immigrant B-2 visitors with permission to remain in the United States for a temporary period not to exceed February 20, 1989. They remained in the United States beyond that date without proper authorization from the INS.

Appearing before the Immigration Judge (IJ) on July 19, 2000, petitioners, through

---

[**]We recognize, of course, that the Department of Homeland Security recently took over the functions of the former INS. For the sake of convenience, and because the INS was the actor at most times relevant to this appeal, we continue here to refer to the INS.

counsel, conceded removability. They sought relief from removal by petitioning for political asylum, withholding of removal, voluntary departure and withholding of removal under the Convention Against Torture. Their applications for political asylum were based on fear of the persecution they would face if forced to return to India. The IJ denied their applications on the basis of an adverse credibility determination but granted voluntary departure.

Petitioners filed a timely notice of appeal with the BIA. In an order issued January 23, 2003, the BIA affirmed the IJ's decision without opinion. Petitioners filed a timely petition for review of the BIA's decision. They allege that the BIA erred by summarily affirming, without a separate opinion, the removal orders pursuant to the streamlining regulations of 8 C.F.R. § 3.1(a)(7) (2004).[***] They also contend that the IJ incorrectly decided their applications.

## I.

Petitioners assert that the BIA committed reversible error because it affirmed the IJ's decision without issuing a separate opinion. *See id.* § 3.1(a)(7)(ii).[****] We have

---

[***]Since the time of Petitioners' appeal to the BIA, the streamlining regulations have been moved to a different section of Chapter 8 of the Code of Federal Regulations. *See id.* § 1003.1(a)(7).

[****]Section 3.1(a)(7)(ii) provides, in relevant part:
> The single Board Member . . . may affirm the decision of the . . . Immigration Judge, without opinion, if the Board Member determines that the result reached in the decision under review was correct; that any errors in the decision under review were harmless or nonmaterial; and that
> (A) the issue on appeal is squarely controlled by existing Board or federal

3

jurisdiction over final orders of removal issued by the BIA pursuant to 8 U.S.C. § 1252 (2004). After the Petitioners filed their petition for review of the BIA order, this Court held that the streamlining regulations and the BIA's authority to issue an order affirming the IJ's order without a separate opinion does not violate the INA or the United States Constitution. *Dia v. Ashcroft*, 353 F.3d 228, 234-45 (3d Cir. 2003) (en banc). "The fact that the review is done by one member of the BIA and that the decision is not accompanied by a fully reasoned BIA decision may be less desirable from the petitioner's point of view, but it does not make the process constitutionally 'unfair.'" *Id.* at 243-44. Therefore, the mere fact that the BIA streamlined the appeal is not reversible error.

## II.

Petitioners also argue that their applications were wrongly decided. Where the BIA adopts the Immigration Judge's decision as its own, we review the merits by reviewing the Immigration Judge's decision as the final decision of the agency." *Chen v. Ashcroft*, No. 02-2978, 2004 WL 362287, at *802 (3d Cir. Feb. 25, 2004).

To be granted asylum as refugees, applicants must establish that they are unable to return to their homeland "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political

---

court precedent and does not involve the application of precedent to a novel fact situation; or
(B) the factual and legal questions raised on appeal are so insubstantial that three-Member review is not warranted.
8 C.F.R. § 3.1(a)(7)(ii).

opinion." 8 U.S.C. § 1101(a)(42) (2004). Whether an applicant has demonstrated "persecution" or a "well-founded fear of persecution" is a factual determination reviewed under the substantial evidence standard. *Abdille v. Ashcroft*, 242 F.3d 477, 483 (3d Cir. 2001). Under this standard, we will uphold findings of fact to the extent they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Balasubramanrim v. INS*, 143 F.3d 157, 161 (3d Cir. 1998) (internal quotation and citation omitted). Similarly, adverse credibility determinations are also reviewed for substantial evidence, *see Dia*, 353 F.3d at 247, and must be upheld unless "any reasonable adjudicator would be compelled to conclude to the contrary." *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002) (citing INA § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B)) (internal quotation omitted). Only discrepancies that "involve the heart of the asylum claim" can support an adverse credibility finding. *Id*. "[M]inor inconsistencies" do not provide an adequate basis for an adverse credibility finding. *Id*.

We have reviewed the record in its entirety and find substantial evidence to support the adverse credibility determination. Petitioners argue that, because they are Muslim, they will be persecuted by the primarily Hindu population if returned to India. However, when Allauddin, the father, testified before the IJ, he did not provide any specific or substantial evidence of past persecutions. As the IJ noted, Allauddin "paint[s] with . . . [a] broad brush."

Allauddin alleged that, throughout his life, the Hindu majority harmed him,

5

discriminated against him, harassed him, persecuted him, and threatened his life. Nevertheless, Allauddin was a flight attendant for the government-run India Airlines for seven and a half years before moving to the United States. During this time, Allauddin received complimentary airline tickets to the United States. When Allauddin did finally decide to leave India in May 1987, he remained in the United States for only a short period of time. On this first trip, he came alone, without his wife and son. After returning to India for a couple of months, Allauddin decided to return to the United States. In November 1987, he did so, accompanied by his wife and son. Inconsistent with Allauddin's testimony regarding how bad things were for him as a Muslim in India, Allauddin decided to take his family back to India after only a few months in the United States. Again this is inconsistent with Allauddin's testimony about past persecutions of himself and his family. If petitioners were truly fearful of being persecuted in India, it is difficult to understand why they would return to the country they feared so much. Petitioners ultimately returned to the United States in August 1988 and have been here ever since.

Allauddin's testimony was also inconsistent with the State Department's 1996 report on India, *Comments on Country Conditions and Asylum Claims*, and with petitioners' asylum application. The 1996 Country Report states that "[a]pproximately 100 million Muslims lead productive lives in India. They live, work and worship without interference by the Government." The IJ found that petitioners' vague allegations of

6

persecution were inconsistent with the specific findings of the Department of State. In their application for asylum, they made no claim that they had been beaten by Hindus or that they had received threats against their lives. These inconsistencies go to the heart of their asylum claims and would not compel any reasonable factfinder to find that their claims were credible.

III

For the foregoing reasons, we will deny the petition for review.